Our second case in the morning, Goodwin v. Urbana-Champaign Sanitary District. Mr. Otto, for the afternoon. Mr. Giler, you may proceed. May it please the Court, Mr. Giler. My name is John Otto, and I represent Melvin Goodwin, the appellant in this case. This case arises under the Illinois Human Rights Act. As far as I can tell, the case represents one of the first cases to come up on appeal after the legislature amended the Act to provide that after an investigation by the Human Rights Department, the complainant has the right to file suit in circuit court with the right to jury trial on the allegations of the complaint. Unlike the situation before the amendment where the Court's review was in an appellate capacity, this is a direct action in the circuit court, not a review of what the Human Rights Department or Commission did. The trial court granted the employer summary judgment on a motion that was filed simultaneously with the defendant's answer. There was no discovery. The sanitary district argued in the district court that the investigation by the Human Rights Department provided all the discovery that the plaintiff needed. The issue before the Court today, there's two issues really. One is, is there any issue of material fact as to the prima facie allegations that the defendant discriminated against the plaintiff when it terminated him due to a reduction in force of one person? And is there any issue of material fact as to whether the defendant retaliated against the plaintiff for having engaged in a protected activity? There's not really any issues of law except to the extent that one might be raised in the supplemental reply brief that I understand the Court allowed the defendant to file. I filed an objection to that this morning, and so I won't get into that brief unless the Court has questions about it or wants me to address it. The plaintiff has provided facts to provide a prima facie case of race discrimination. What is it? What is the prima facie case? Well, first of all, the plaintiff has to prove that he's in a protected class. That's uncontested. He's black. Secondly, that the plaintiff was performing his job satisfactorily. He received no discipline or complaints about his work for more than five years before he was terminated. The defendant doesn't claim that they terminated him because he wasn't performing satisfactorily. They said it was a reduction in force. After the plaintiff was transferred to a different section of maintenance, to the building and grounds section, he routinely worked back at his old job for up to six months at a time. There was no record of any complaints during that time. So all of that is facts from which a jury could determine... Is there any dispute based upon the union contract and seniority that these are actually two different positions and that his reduction in force, had he not been the one chosen, that someone higher up the ladder would have gotten bumped, which would have been contrary to the contract under which he worked and received benefits? Your Honor, the collective bargaining agreement provides for seniority and there's no dispute that he was on the bottom of the seniority in the mechanical section. But what provides a dispute is the fact that the defendants hired two people just months before they laid him off. Not for his position. But in a position that he had been working in. A position that he'd been removed from because he was unable to do it. There's evidence that six or seven years earlier, a job that he holds, that his performance is not... It's not that it's so bad that you're going to fire them, but you know, you're not doing a good job at this, so we're going to do this other job and you can do that fine. Maybe you can do some movement back and forth, but these are two distinct job classes, are they not? Your Honor, on paper, there are two different job descriptions. However, the duties of the job descriptions are very similar. And there is no dispute that during the time that the plaintiff was working in building and grounds, he was transferred up to six months of time to do the other job. There's no evidence that he didn't do that satisfactorily for the last five years. None. During the times that he was transferred? Yeah. But there is evidence that they didn't want him to have that position permanently because they'd given him a good trial at that and it didn't work out. I don't... You don't think there's evidence to that? I don't think so, Your Honor. The letter that transferred him from the maintenance section to the building and grounds section simply said he was being transferred. It didn't say it's because you're still not doing a good job. And after he was in the building and grounds section, there was no new documentation and no evidence of any verbal comments that he was not satisfactorily doing the job when they sent him back to do what he'd been doing. So, to conclude that these were all... these were completely separate is parsing the situation. And of course, that's what the defendant would like to do is look at everything in isolation rather than everything that happened. And the evidence that he was satisfactorily performing his job, it's disputed, granted. The defendants can have somebody come testify that he wasn't satisfactorily performing his job. But then they would be subject to cross-examination. Well, if he wasn't, why do you keep assigning him to do the same job he had been doing for six months at a time? And there's no evidence. This is speculation by the defendant's attorney that there are only parts of the job that he did when he was transferred back. The evidence is that he simply was transferred back and did what he had been doing. It's undisputed that they took an adverse action. Termination is an adverse action. The fourth prong is that a similarly situated employee, not a member of the protected group, was not terminated. Here, there was a reduction in force of one. The defendant could have said, we're going to get rid of you because you're not performing adequately. And then there would be remedies under the union contract as to whether that was just cause or not. But they didn't do that. They said, we're going to have a reduction in force, but you're the only person whose force we're reducing. The defendant tries to imply that, well, the reason it was him is because he was a bad worker. But if that was the reason. During the several, during the months and during the time period leading up to this, were there other reductions in budget and workforce and belt tightening? I think there is evidence that there were positions that were not filled. But there's no evidence that anybody else had ever been laid off for lack of work in the history of the sanitary district. And so that's a completely different situation. If you don't fill a position versus singling out one person and saying, you're being laid off for lack of work. Again, the defendant tries to have its cake and eat it too. Tries to say, well, this was a reduction in force, which we're allowed to do by the contract. But, and which they are. They're allowed to do a reduction in force by the contract. But they try to interject this argument that, well, he wasn't a very good employee. He wasn't doing his work. And so that's why we got rid of him. And so that's all evidence that a jury could consider in deciding the credibility of the defendant's reason why they say that they terminated him. After the plaintiff presents a prima facie case, then the defendant has to enunciate a business reason for taking that action. And then the defendant has to present evidence as to why that's not believable. And we have that evidence as to why it's not believable. The fact that they hired other people to do the same job, both before they laid him off and after they laid him off. And when he applied, they didn't consider his application. They didn't even interview him for the job. And the fact there's a letter in which the defendant says that the plaintiff was qualified to do the job. Now that, granted, was five years earlier when he was first given the job in the maintenance department. But he didn't lose skills. There's no evidence that he lost any skills. So as far as basic qualification, by the defendant's own evidence, he had basic qualification. Or at least enough to be able to have a jury consider it. With respect to retaliation, the plaintiff has to show evidence that he engaged in protected activity. And there's no dispute that the plaintiff complained of discrimination in November 2002. Now, the defendant argues that's too long between 2002 and 2008 when he was discharged. Or 2009 when he was discharged. The closeness of the time between when someone takes protected action by complaining of discrimination and when the retaliation occurs is one way for an employee to prove his case. If one day the employee files a complaint and says, I think they're discriminating, and that same day he gets fired, obviously that's a pretty good way to show that there's some kind of connection. But there's no case law that says that if the defendant waits a certain period of time, a year, two years, three years, then that immunizes the defendant from any claim of retaliation. Some defendants are smart enough that they don't act immediately. What the plaintiff has to prove, what we needed to prove, was to show some evidence for which a jury could believe that the reason he was terminated was in retaliation for that previous charge. And we're not relying on time. But the fact that time elapsed, again, does not then give the defendant immunity. Here there was evidence. Again, the evidence is that the plaintiff was terminated in February 2008 after he'd been working for the, I mean the plaintiff was terminated after he'd been working for the defendant for ten years. It was a reduction in force of one person. The defendant had advertised a vacancy for which the plaintiff had previously been found to be qualified, and they hired two people just months before they reduced force. If there was such a separation between the two departments that no jury could find that the plaintiff didn't need to be terminated, then the defendant would not have kept reassigning the plaintiff to go work in the other department. So this is a case that's crying out to be heard by a jury as the legislature provided. And unless the court has other questions, I think I'll conclude my argument at that point. I have a question in the defendant's brief on page 23. It is stated, at no time has the defendant argued that the plaintiff was terminated as a result of job performance. To the contrary, the defendant has clearly and consistently stated that plaintiff's employment was terminated as a result of a reduction in force. That is contrary to what you've argued here today. What's your response to what I just read to you? No, I agree that the defendant has consistently said it was a reduction in force, but then they keep trying to prejudice the court by bringing in the performance. If it was a reduction in force, why is the defendant even mentioning his performance? It has nothing to do with it. He wasn't terminated because of his performance. Well, I think the defendant, I won't speak for counsel, is going to argue you're the one that is putting this into play because of the prior discrimination charge. Do you anticipate that that's what's going to be argued here in a couple minutes? I'm sure she'll come up with a lot of creative arguments. Your Honor, the defendant's whole push has been in the circuit court, and it's brief in this court, is that this plaintiff just couldn't do the work. And I would never have brought up his performance, other than the fact that I had to respond to their arguments that he was not performing properly. I think if I remember correctly, one of Justice Connick's first questions was his ability to perform the work. The performance is tied into the treatment, and the treatment is tied into the move from one department to another, which prompted him to file his initial claim. You can't ignore the fact that there was, from the perspective of the district, substandard work performance that was documented by telling him and having 90-day corrective actions, and telling him that he was at risk of being terminated, and then in the letter transfer, telling him he's being transferred, explaining it. How do you not get into that if you talk about retaliation? Your Honor, I'm not arguing that the transfer was retaliation. No, but that's at the time that he filed the complaint, that you say is the basis for six years later, they decided, aha, now's the chance to get rid of him. Actually, Your Honor, he filed his original discrimination complaint some months before he was transferred. November of 2002, and he was transferred in early 2003. So, again, he wasn't saying when he filed his first complaint that he was complaining because he was transferred. I understand, but he was complaining about the way that he was being treated. Yes, he was complaining about how he'd been treated. Which prompted him to file a complaint, which you claim is the basis for later retaliation. So what leads up to the filing of the complaint is part and parcel of this case. Well, Your Honor, whatever happens to that first complaint, whatever its reason, whether it was founded or not founded, has no bearing on whether a person can be retaliated against later for filing the complaint. So, I mean, we really don't, for a retaliation complaint, we don't need to show that. Yeah, I'm not suggesting that you need it. I'm saying it's part of the story. Well, it is part of the story. Yeah, I don't mean that it's something that you need to affirmatively show at all. Sure, okay, I agree with that. It's part of the story. Yeah. So who brings it up? Whether it's me or you or Ms. Geiler, it's there. It's part of the story. Is your time expired? No, I still have time. Oh, I'm sorry. Do you have any other questions? No. Thank you. Thank you. May it please the Court, Mr. Radov. I'm just going to briefly address some of the things that Mr. Radov said. But before I do that, I want to give you the facts, and I do want to clarify or address any questions you have with respect to his performance. Unequivocally, I want to say Melvin Goodwin was terminated as a result of a reduction in force. His performance did not play a role in the decision to reduce the force of the building and grounds section of the Urbana-Champaign Sanitary District, nor did his performance play a role in the decision to terminate him as a result of that reduction in force. Unequivocally, I'm saying that. So the termination part really is a riff. That's all it is. And it's clear, there's no evidence to the contrary. Unless this Court were to find that there is a material issue of fact that the sanitary district sat back and waited for six years, because, well, he doesn't have to establish day after proximity or six months after proximity. That is a factor that is considered. That is a factor that's considered in a summary judgment motion. How close in time did this retaliation that's alleged occur? It's just too far. And there was nothing else there. So when I was looking at this, I was thinking, how do I put this before the judge? Because I'm proving it negative, of course, which is always difficult. So how do I put this before the judge? Well, how would I do it if I were the plaintiff? Was it close in time? Was there some direct evidence? Was there, as a part of the reduction in force, did we seem to single out a certain race? We eliminated one position at that time. Absolutely, we eliminated one position. There's nothing wrong with that. We don't have to have a history of eliminating two positions at a time, one position at a time. The fact that we had not filled prior positions through attrition, that is a kind way of reducing your force. Is Mr. Otto's statement accurate that this is, if not the first time, I think he said the history of the district. Maybe that would be hard to track. I don't know. But it was unusual to be terminating as opposed to attrition. Absolutely. It was unusual. Was it also unusual, was this the first time that the district had been outsourcing things like mowing the yard, Julie, mocage, snow, etc.? Yes. That's what had happened between, it was a process. I think you have to look, at least for the purpose of relevancy of this, you have to look, okay, let's go back to 2002-2003 when Mr. Goodwin went into building and grounds and see how that had changed by February 14, 2008. And in that interim period, and it was in the record, in that interim period there had been a substantial amount of outsourcing. We didn't do Julie locates anymore. Snow removal was getting outsourced. Some of the mowing at the plants was getting outsourced. So the building and grounds group was shrinking. Not the mechanical or the electrical, the building and grounds group was shrinking. Had it also shrunk by attrition? Yes. It had gone from 10 to 7. With Mr. Goodwin it was 10 to 7. And it's not in the record, well then I won't argue it, but it continues to shrink. That job is getting smaller. That piece is getting smaller. So Mr. Goodwin, he was a low man. There's no disagreement that the collective bargaining agreement controlled these positions and Mr. Goodwin was a low man. He needed to go if there was going to be a rip. That's all there is to it. His performance did become an issue, and as Justice Connect you've caught, it's an issue because we're claiming retaliation and we're claiming, you know what, there were two positions in the mechanical section that came open in the year prior to Mr. Goodwin being terminated. Why didn't you tell Mr. Goodwin that he was going to be terminated and that the mechanical positions were open so he would go ahead and apply for those and presumably get those? Or when somebody in the mechanical section quit, moved on, retired, I'm not sure what, and it's not in the record, but left, and there was an open position in the mechanical section after Mr. Goodwin's termination, why didn't you have him come in for an interview? Why didn't you offer him the position? His performance in the mechanical section then becomes clearly an issue. His performance in the mechanical section was not satisfactory. There is no evidence in the record that he was performing the same job. When he would transfer back, he keeps calling it transfer back, he would go fill in, he would cover when the mechanical section needed coverage over time. It's not before the trial court, it's not before this court, but it was clear that he had gone into the mechanical section from time to time and done something. That's all that's clear. It's Mr. Goodwin's affidavit that tells you what he did. And he says, and this is the record at page 113, after I was transferred to Building and Grounds, I was routinely assigned to work as a, quote, maintenance worker, close quote, in the mechanical section, sometimes for up to six months at a time. That's all we know. That's all we know he did. We know what the mechanical section jobs were because Ms. Lytle attached to her affidavit the job description for the mechanical section and the job description for the Building and Grounds section. There's a lot of stuff Mr. Goodwin could have been doing when he was filling in in the mechanical section for up to six months at a time. That is not the mechanical section job. It's different when you have someone fill in. All of us have dealt with temporary help in one form or another. When you fill in, the expectation is different than when it's your job. So it is misleading at best to say he was doing the same job. That's not in the record. And had that been an issue, had that been something that the trial court should have considered, it would have clearly been contested. He wasn't doing the same thing. But it wasn't important because... Well, since that's a factual question, isn't that something that would not lend itself to a granting of a summary judgment? If it were an issue of material fact, it would. But it doesn't matter. It doesn't make any difference. No, he was terminated because of a reduction in force. That's all there is to it. If we would have gone to a jury, yes, we would have had to deal with this because he would have said that I'm the best. And we would have had to deal with it. But it doesn't get to a jury because there was nothing to get past. This is a riff. You're a low man. This is a riff. That position, don't misunderstand. I don't think Mr. Otto meant to misrepresent. He said two positions that he had done before came open. Two positions in the mechanical section came open. There are no new positions in building and grounds. There weren't and haven't been any new positions in building and grounds. So the trial court doesn't have to deal with that. Nor does this court because it was a riff. His position or that position was eliminated. He happened to be the employee holding the position. And under the CBA, the collective bargaining agreement, he's the employee that goes, regardless of whether he's black. He's white. He filed a claim six years ago. He didn't. That's just the way it is. The last thing I want to address, unless there are questions, of course, that Mr. Otto raised was this waiting six years doesn't immunize the sanitary district or any other employer from retaliation. And he's absolutely right.  who are not immune to retaliation. They're not immune to retaliation. There are employers that would wait to do that. Certainly you'd wait for some period of time. Would you wait for six years and then I gotcha because we can do a reduction in enforcement. It seems to be cutting off your nose to spite your face, quite frankly, to eliminate a position that doesn't need to be eliminated in your own workforce. So it doesn't make any sense. But there's no evidence of that. So I would say similar to an employer is not immunized by the passage of time. An employee is not immunized from termination for a RAF, for performance, for whatever by filing an employment discrimination charge. And that's what he's claiming here. I filed an employment discrimination charge in 2002 because I didn't like the way I was being treated. So effectively any time you make a negative employment decision about me, I'm going to harken back and say it's retaliation. That's what happened here with nothing more than the fact that he had filed an employment discrimination claim in 2002. Without more, there's not enough. There's not an issue of material fact. This doesn't ever get to a jury. Summary judgment at a directed verdict, it doesn't get to a jury. There's nothing here. I'd like to briefly address the argument by counsel that Mr. Goodwin did not produce any evidence that he was doing the same work when he went back to work in the mechanical section. He did in his affidavit, which is at 113 in the record, 52 of the appendix, say after I was transferred to building and grounds I was routinely assigned to work as a maintenance worker in the mechanical section, sometimes for up to 6 months at a time. He doesn't spell out every task that he did. That would be trying to have to prove the negative that he did everything. The defendant would have had to provide evidence that he wasn't doing everything. They haven't. If you look at Ms. Lytle's affidavit, particularly at record 7, appendix 11, she doesn't address that issue. So the state of the record aside from what the defense, what the counsel is arguing, the state of the record is that when he was transferred back, when he was assigned back, if you don't want to call it transfer, he was doing the same work that the other mechanical workers were doing. That's the state of the record. The defendant takes refuge behind the collective bargaining agreement, but the collective bargaining agreement obviously did not prevent a person who was nominally in building and grounds from working in the mechanical section because Mr. Goodwin did it for long lengths of time. Not just for a day or two if someone was absent, but for six months at a time. So to say, well, this was just something that the collective bargaining agreement required, there's certainly evidence from which a fact finder could say, that isn't what the collective bargaining agreement required. Otherwise, why was he assigned back? The defendant admits they only eliminated one position, I think they admit ever. That in itself raises questions. Why does the one position that you ever decide you need to rift involve a black man who had previously caused trouble by filing a discrimination complaint? We're not arguing that because he had previously filed a discrimination complaint, he is then immunized and can never be fired if he's not performing properly. But again, the defendant says, oh no, he was working satisfactorily. We're not saying he wasn't working satisfactorily. So the jury can consider that and decide whether the defendant's stated reason is legitimate or not. That's what trials are for. Thank you. Thank you counsel. We'll take this matter under advisory.